IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ENLOE MEDICAL CENTER,

    Plaintiff,                                 No. CIV S-10-2227 KJM-DAD

    vs.

PRINCIPAL LIFE INSURANCE CO.,

    Defendant.                               <u>ORDER</u>

/

        This matter is before the court on the motion for summary judgment filed by Principal Life Insurance Company ("Principal" or "defendant"). The motion relies on Federal Rule of Civil Procedure ("Rule") 56, or, in the alternative, seeks judgment under Rule 52. The court heard argument on July 27, 2011; Celim Huezo appeared for Enloe Medical Center ("Enloe" or "plaintiff"); Edna Bailey appeared for defendant. For the reasons set forth herein, defendant's motion is DENIED.

I.    <u>BACKGROUND</u>

        Enloe and Principal are parties to a preferred provider agreement whereby Enloe agrees to provide medical services to individuals insured by Principal insurance plans. Plaintiff's Statement of Undisputed Material Facts ("PUMF") ¶¶ 15, 16, ECF 26-1. Between February 23, 2007 and May 2, 2007, emergency responders rushed three individuals covered by defendant's insurance

1

policies to Enloe for emergency trauma care. *Id.* ¶¶ 23, 39, 43. As a matter of course, when Enloe is notified that a trauma victim is en route, it immediately activates a trauma team to enable it to provide appropriate care in a timely fashion. Opp'n at 7, ECF 26. The present dispute revolves around whether Principal must pay Enloe for trauma activation costs under the preferred provider agreement, under a separate implied in fact contract between the parties, based on defendant's representations, or based on the requirements of California Health and Safety Code § 1371.4.

Plaintiff instituted this action in Butte County Superior Court on June 11, 2010, alleging breach of written contract, breach of implied in fact contract, negligent misrepresentation and violation of California Health and Safety Code § 1371.4. ECF 1. Defendant removed the action to this court based on diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff contests federal question jurisdiction, but not diversity jurisdiction. *See* PUMF ¶ 13.

II.   UNDISPUTED MATERIAL FACTS

On February 23, 2007, a train hit Patient 1's small truck when he drove across a train track. PUMF ¶ 39. On March 14, 2007, Patient 2 fell off of his horse while riding, hitting the saddle horn and then the ground. PUMF ¶ 23. On May 2, 2007, then-two year old Patient 3 fell out of a two story window. PUMF ¶ 43.[1] In each instance, emergency responders transported the covered patient to Enloe Medical Center to receive trauma care. Opp'n at 7; PUMF ¶¶ 23, 39, 43. The Nor-Cal EMS Trauma Activation guidelines provide that when certain criteria are met, emergency responders must notify the nearest hospital they are en route. ECF 26-3 at 35-37. The hospital, in turn, activates a trauma team. *Id.* The 2008 guidelines direct hospitals to notify specified trauma specialists within three minutes of receiving the alert. *Id.* Advance notice enables the trauma team to provide care immediately upon the arrival of a trauma victim. *Id.* Enloe suggests it follows these guidelines in its trauma activation process.

---

[1] Patient 1, Patient 2 and Patient 3 are at times referred to individually as "covered patient" or collectively as "covered patients."

2

Patient 1 and Patient 2 each were covered under the Rolling Hills Policy through their employment with the Rolling Hills Casino. PUMF ¶¶ 4, 5.[2] Two year old Patient 3 was covered by the Anderson Policy through his mother's employment with Anderson and Associates, Inc. *Id*. ¶ 7. Defendant claims that both policies are governed by the Employee Retirement Income Security Act of 1974 (ERISA). *Id*. ¶¶ 6, 8. Each of the covered patients assigned their health plan benefits to Enloe. *Id*. ¶¶ 24, 40, 44.

Patient 2 spent four days at plaintiff's hospital. *Id*. Sometime after he was admitted, plaintiff sought authorization for services rendered to Patient 2, including the four days in the hospital. *Id*. ¶¶ 25, 26. Defendant confirmed that Patient 2 was covered under the Rolling Hills policy and authorized four days in the hospital. *Id*. According to defendant, when plaintiff validated coverage for Patient 2, it received a disclosure that the authorization was not a promise to pay. *Id*. ¶ 26. However, the report from the authorization call merely provides a line where "Discl: 8" is listed and no further explanation is offered. ECF 27-14 at 36. Plaintiff billed defendant $89,437.18 for services rendered, of which $25,405.00 was attributable to the trauma activation. PUMF ¶ 28. Defendant denied payment for the trauma activation but paid the rest. *Id*. ¶ 29.

Plaintiff similarly billed defendant for trauma activation associated with the emergency care of Patient 1 and Patient 3. *Id*. ¶¶ 41, 45. These charges were also denied. *Id*. ¶¶ 42, 46. With respect to Patients 2 and 3, plaintiff appealed defendant's initial determination to Principal as the plan fiduciary. *Id*. ¶¶ 31-38, 47. With respect to Patient 1, plaintiff submitted an untimely appeal. *Id*. ¶ 42. In response to each appeal, defendant reiterated that trauma activation did not constitute a covered charge under the Rolling Hills health plan because "standby services" were explicitly excluded from coverage. *Id*. ¶¶ 31-38, 42, 47.

---

[2] In the PUMF, plaintiff identifies many facts as disputed but then fails to provide evidentiary support for its position. Any such facts are deemed admitted based on plaintiff's improper response. *Flores v. Von Kleist*, 739 F. Supp. 2d 1236, 1242 (E.D. Cal. 2010) ("Where Plaintiff has failed to provide facts that specifically controvert Defendant's facts, Plaintiff is deemed to have admitted the validity of the facts contained in [Defendants' statements of undisputed facts].") (internal quotation omitted).

3

The Rolling Hills Policy and the Anderson Policy (together, the "policies") only reimburse "covered charges" and explicitly do not reimburse for "standby services" (*Id.* ¶ 21); however, "standby services" is not a defined term in the policies. *Id.* ¶¶ 30, 42, 47. Under the policies, a "covered charge" has the following definition:

> A Treatment or Service is considered to be a Covered Charge if the treatment or service is: prescribed by a Physician and required for the screening, diagnosis or treatment of a medical condition; consistent with the diagnosis or symptoms; not excessive in scope, duration, intensity or quality; the most appropriate level of services or supplies that can safely be provided; and determined by the Principal to be Generally Accepted.

ECF 27-1 at 14; ECF 27-5 at 10. The policies also grant Principal discretion to determine eligibility for benefits:

> The Principal has complete discretion to construct or interpret the provisions of this group insurance policy, to determine eligibility for benefits, if any, to be provided. The decisions of the Principal in such matters shall be controlling, binding and final as between the Principal and persons covered by this Group Policy.

ECF 27-1 at 32; ECF 27-5 at 29. Defendant determined that trauma activation is a standby service and therefore not reimbursable. PUMF ¶ 30.

The parties disagree as to which preferred provider agreement controls in this instance. Plaintiff contends that the applicable contract is the Superior California PPO Agreement while defendant contends the Pacific Foundation for Medical Care PPO controls. According to plaintiff, this disagreement over the applicable contract is proof of a material factual disagreement that justifies denying summary judgment to defendant. Opp'n at 8-9. Despite this contention, the parties do not address what material effect the applicable preferred provider agreement would have on plaintiff's claims. The factual dispute as to which preferred provider agreement controls is not "material" such that it would preclude summary judgment, because the parties appear to agree the operative provisions are identical.

/////

/////

### III. SUMMARY JUDGMENT STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

---

[3] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

*Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

IV.     ANALYSIS

    A.     Breach of Written Contract

Plaintiff and defendant disagree over how the breach of contract claim should be analyzed. Defendant addresses the breach claim as follows: the underlying provider agreement references the ERISA-governed policies to define "covered charge," therefore, in order to address whether defendant breached the provider agreement, the court should apply ERISA deference standards to defendant's determination that trauma activation is not a covered charge. ECF 14. According to plaintiff, this approach is a cleverly disguised preemption argument: because the plan is governed by ERISA, defendant is arguing that ERISA standards must apply whereas, as pled, plaintiff's breach of contract claim is a state law claim that does not invoke ERISA standards. Defendant's counsel was adamant at oral argument that defendant is not making a preemption argument, but rather is addressing the state law breach claim directly. However, defendant's argument ultimately treats plaintiff's state breach of contract claim as though it were a claim for benefits under 29 U.S.C. § 1132, when plaintiff did not bring an action under this section.

The court will not independently convert a breach of contract claim into an ERISA benefits claim. To the extent plaintiff's claim is actually a claim for benefits, however, such a claim is preempted. *See, e.g.,* 29 U.S.C.A. § 1144(a) (ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan . . ."); *Blue Cross of Cal. v. Anesthesia Care Assoc. Med. Group, Inc.*, 187 F.3d 1045, 1054 (9th Cir. 1999). Accordingly, the court looks to whether ERISA governs in light of the claims plaintiff has pled. Also at argument, defendant asserted that the "mere existence" of the health plans establishes ERISA applicability. ERISA, however, does not categorically apply to all health

/////

plans, but rather contains important exclusions. *See* 29 U.S.C. § 1003(b). As such, ERISA applicability is not a fact that can be assumed. Plaintiff does not contest ERISA applicability *per se*, but instead, as noted, regards ERISA as irrelevant to its claims based on state law.

In support of the critically important and seemingly straightforward point that the plans are governed by ERISA, defendant cites huge swaths of material instead of providing pinpoint citations. PUMF ¶¶ 6, 8. For instance, to support the proposition that the Rolling Hills policy is governed by ERISA, defendant cites more than six hundred pages of the record. PUMF ¶ 6. On summary judgment, the moving party bears the burden of properly supporting its factual allegations. E.D. Cal. Local Rule 260(a) ("Each motion for summary judgment or summary adjudication shall be accompanied by a 'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish that fact."); *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir.1988) ("In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted."); FED. R. CIV. P. 56(e). Furthermore, the Ninth Circuit has long recognized that a district court is not obligated to scour the record on a party's behalf. *See, e.g., Nilsson*, 854 F.2d at 1545 (holding that a trial judge is not required to assist a party in locating relevant factual material in the record); *Schneider v. TRW, Inc.*, 938 F.2d 986, 990-91 n.2 (9th Cir. 1990) ("the law of this circuit, [] recognizes that a district court is under no obligation to mine the full record for issues of triable fact").

Defendant was offered the opportunity at hearing to provide a pinpoint citation to cure the lack of support for its motion, but did not do so. Accordingly, defendant's motion for summary judgment on the breach of contract claim is DENIED.

/////

/////

B.      Breach of Implied in Fact Contract

California law recognizes two varieties of implied contract: contracts are implied in law where "the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice" (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* 41 Cal.App.4th 1410, 1419 (1996)); and, contracts are implied in fact where the parties' actions evince an intention to create a binding contract. *See Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794 (1953) ("The only distinction between an implied-in-fact contract and an express contract is that, in the former, the promise is not expressed in words but is implied from the promisor's conduct"). Unlike quasi-contracts or contracts implied in law, contracts implied in fact reflect the parties' actual intentions. *Id.*; *see generally Gunther-Wahl Productions, Inc. v. Mattel, Inc.*, 104 Cal.App.4th 27, 36-42 (2002) (collecting early cases); *see also Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011).

"An implied [in fact] contract is one, the existence and terms of which are manifested by conduct." Cal. Civ. Code § 1621. Whether the parties' conduct creates an implied contract-in-fact is a question of fact determined by looking at the totality of the circumstances. *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal.App.4th 809, 829 (2007). "[I]mplied-in-fact contract terms ordinarily stand on equal footing with express terms." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 677-78 (1988). The recognition of implied-in-fact contracts "effectively reverses the common law presumption that the parties' writing and the official law of contract are the definitive elements of the agreement. Evidence derived from experience and practice can now trigger the incorporation of additional, implied terms." *Id.* at 679 (citation and quotation omitted).

Defendant argues that plaintiff's implied in fact contract claim cannot succeed on two grounds: first, because it addresses subject matter covered by a written agreement; and, second, because a telephone confirmation of coverage and benefits cannot constitute a promise

/////

1 to pay. Defendant does not adequately support its argument so as to prevail on summary
2 judgment.

3 Regarding the first argument, defendant fails to appreciate the difference between
4 contracts implied in law and contracts implied in fact. Each case defendant cites in support of its
5 argument addresses the former and not the latter, when it is the latter at issue here. One citation
6 is to a Ninth Circuit case interpreting Arizona contract law, which is wholly inapplicable to this
7 case. *See* ECF 30 at 10 (citing *Newberry Corp. V. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th
8 Cir. 1996) (applying Arizona contract law)).

9 Defendant argues that "quasi-contractual claims may not co-exist with express
10 contracts to the extent they address the same subject matter - here, payment for medical services
11 rendered to patients." ECF 30 at 7. For implied in law contracts, California law provides that an
12 implied term cannot address the same subject matter as an express agreement. *See Hedging*
13 *Concepts*., 41 Cal. App. 4th at 1420 (court cannot use equity to replace contract's express terms).
14 This rule is not clearly established with respect to implied in fact contracts.

15 By their very nature, implied in fact contracts can supplement or clarify written
16 agreements on the same subject matter. *See Foley,* 47 Cal.3d at 681-82 (where employment-
17 related agreements did not address at-will status, plaintiff could state a claim for an implied in
18 fact contract to terminate for only for cause). Unlike implied in law contracts, implied in fact
19 contracts allow implied terms to address the general subject matter of an express agreement so
20 long as it does not contradict an express written term. *See Guz v. Bechtel Nat. Inc*., 24 Cal.4th
21 317, 340 n.10 (2000) ("most cases applying California law,[] have held that an at-will provision
22 in an express written agreement, signed by the employee, cannot be overcome by proof of an
23 implied contrary understanding"); *see Halverson v. Aramark Uniform Services*, 65 Cal.App.4th
24 1383, 1390 (1998) ("an implied-in-fact promise not to terminate except for good cause cannot
25 contradict the contractual at-will provision").  Defendant has not established as a matter of law
26 that the implied in fact terms here would contradict an express term. Rather, the parties' dispute

over the ambiguous terms "covered charges" and "standby services" supports the conclusion that an implied contract in this instance would not contradict an express term in either the preferred provider agreement or the applicable policy.  The court thus need not consider the interaction of an implied in fact contract with a coterminous written instrument under California law.

Regarding defendant's second argument, courts have taken divergent views on whether a validation and authorization call can constitute a promise to pay for purposes of contract creation. *Compare Cedars Sinai Medical Center v. Mid-West Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) ("verification cannot objectively be interpreted as consent to contract") *with Regents of University of California v. Principal Financial Group*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) ("defendants in this case provided both verification of coverage and explicit authorization for the hospital stay. . . Drawing inferences from the factual record most favorable to plaintiff, it would be reasonable to conclude based on the written authorizations that defendants intended to be bound, subject to the provisions of the policy."). In *Marin General Hospital* and *Cedars-Sinai*, the Ninth Circuit determined that contract claims survived preemption analysis and could proceed based on allegations of an oral contract formed during authorization and validation.  *See Marin General Hospital v. Modesto & Empire Traction Company*, 581 F.3d 941, 947 (9th Cir. 2009); *Cedars-Sinai Medical Center v. National League of Postmasters of the U.S.*, 497 F.3d 972, 981 (9th Cir. 2007).Therefore, in some instances, a contract may be created on an authorization call.

In order to determine whether a contract was created, courts look to the totality of circumstances and examine the facts surrounding the alleged contract. *See Foley*, 47 Cal.3d at 388 ("Agreement may be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances") (quotation & citation omitted); *Cedars Sinai*, 118 F. Supp. 2d at 1008 (holding the undisputed facts showed defendant did not objectively "exhibit[] an intent to contract").  Here, defendant asks the court to divine from the March 15 call record, noting "Discl: 8 ," that plaintiff was on notice that the call was not a

promise to pay. ECF 27-14 at 36. No such conclusion can be drawn from the opaque record before the court, which does not rebut plaintiff's *prima facie* claim. Summary judgment is DENIED with respect to this claim.

C.	Negligent Misrepresentation

In California, negligent misrepresentation has six elements: "1. The defendant must have made a representation as to a past or existing material fact. [¶] 2. The representation must have been untrue; [¶] 3. Regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true; [¶] 4. The representation must have been made with the intent to induce plaintiff to rely upon it; [¶] 5. The plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation. [¶] 6. And, finally, as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage." *See Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal.App.3d 388, 402 (1989).

Defendant argues it is entitled to summary judgment on this claim based on plaintiff's failure to specifically address the claim in its opposition brief. "Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment only upon a showing that there are no genuine issues of material fact requiring a trial. The party opposing the motion is under no obligation to offer affidavits or any other materials in support of its opposition. Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Defendant recognized in its opening brief that plaintiff's negligent misrepresentation claim is grounded in the same underlying facts as the claim for an implied in fact contract, and argued the two claims jointly. ECF 14 at 15. Plaintiff's opposition to the implied in fact argument thus is fairly construed as a reply to defendant's negligent misrepresentation argument as well. As with the negligent

misrepresentation claim, the court does not have sufficient facts before it on the record to make a determination at this stage of the litigation. Defendant's motion for summary judgment on the negligent misrepresentation claim also is DENIED.

   D.  Violation of California Health & Safety Code § 1371.4

   California Health and Safety Code section 1371.4 is a provision of the state's Knox-Keene Act mandating that health plans reimburse emergency services providers. Defendant moves to dismiss plaintiff's § 1371.4 claim on the basis that is inartfully pled; namely, that § 1371.4 does not provide a stand alone cause of action but rather must be pled as part of an Unfair Competition Law (UCL) claim, Cal. Bus. & Prof. Code § 17200, or as an element of an implied in law contract. Defendant does not contest its obligation to pay for emergency services under § 1371.4, which provides in relevant part:

> (b) A health care service plan, or its contracting medical providers, shall reimburse providers for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee, except as provided in subdivision (c). As long as federal or state law requires that emergency services and care be provided without first questioning the patient's ability to pay, a health care service plan shall not require a provider to obtain authorization prior to the provision of emergency services and care necessary to stabilize the enrollee's emergency medical condition.
>
> (c) Payment for emergency services and care may be denied only if the health care service plan, or its contracting medical providers, reasonably determines that the emergency services and care were never performed; provided that a health care service plan, or its contracting medical providers, may deny reimbursement to a provider for a medical screening examination in cases when the plan enrollee did not require emergency services and care and the enrollee reasonably should have known that an emergency did not exist. A health care service plan may require prior authorization as a prerequisite for payment for necessary medical care following stabilization of an emergency medical condition.

   Here, plaintiff has simply alleged a violation of § 1371.4. Defendant's sole argument is that "[a] violation of Section 1371.4 can only be raised in connection with the assertion of other claims, such as claims under the UCL or at common law under a quantum

meruit claim as indeed laid out in detail by both cases cited by Plaintiff in alleged support of its argument." Reply at 9, ECF 30. Defendant relies on *Regents of University of California v. Global Excel Management, Inc.*, where the court stated, "[n]evertheless, []causes of actions [under 1371.4] are limited to other statutes, like California's Unfair Competition Law, or common law doctrines such as 'equitable indemnity, comparative negligence, contribution,' or *quantum meruit*." 2010 WL 5175034, at *4 (C.D. Cal. Dec 10, 2010). That case in turn cited *Bell v. Blue Cross of California*, 131 Cal.App.4th 211, 216 (2005) and *Coast Plaza Doctors Hospital v. UHP Healthcare*, 105 Cal.App.4th 693 (2002). *Id*.

Limiting a cause of action under § 1371.4 to claims pled under separate authority unnecessarily extends the *Bell* and *Coast Plaza* holdings. It is true that in *Bell*, the court held "there is nothing in section 1371.4 [] to preclude a private action under the UCL or at common law on quantum meruit theory." *Bell*, 131 Cal.App.4th at 216. Similarly, in *Coast Plaza* the court stated, "The Knox–Keene Act itself contemplates that a provider may have a cause of action under a statutory or common law theory, as we have discussed." *Coast Plaza*, 105 Cal.App.4th at 707. However, *Bell* and *Coast Plaza* only analyzed claims based in the UCL and common law. *Bell*, 131 Cal.App.4th at 216; *Coast Plaza*, 105 Cal.App.4th at 706. Neither case addressed a stand alone claim based on the Knox-Keene Act. In *Coast Plaza*, in particular, the stand alone claim for violation of a portion of Knox-Keene Act was not appealed and therefore the court did not address its viability. 105 Cal.App.4th at 705 n.4. While California courts thus far have not interpreted § 1371.4 to create a stand alone cause of action, the defendant has not provided any binding precedent that holds an independent cause of action is barred.

Moreover, the language of *Bell* lends some support to the view that a private right of action is viable under § 1371.4. *Bell* explicitly relied on the California Department of Managed Health Care's support for "private enforcement" and that "health care providers must be allowed to maintain a cause of action in court to resolve individual claims-payment disputes over the reasonable value of their services." *Bell*, 131 Cal.App.4th at 218. More recently, in *Prospect*

*Medical Group, Inc. v. Northridge Emergency Medical Group*, the California Supreme Court stressed that doctors did not need to engage in "balanced billing," where the amount not paid by the insurer is billed directly to the patient, because the doctors had the right to sue insurers for violations of § 1371.4. *See* 45 Cal.4th 497, 509 (2009) (§ 1371.4 "mandates that the HMO pay the doctor directly. It does not involve the patient in the payment process at all."). In *Prospect*, the court stated, "[b]ecause emergency room doctors prevailed in *Bell*, [], and won the right to resolve their disputes directly with HMO's, no reason exists to permit balance billing." *Id*. at 507. For purposes of this motion, it is enough to note that *Bell* and *Coast Plaza* do not foreclose plaintiff's § 1371.4 claim. The parties do not adequately brief whether the statute does provide an independent cause of action; defendant's one paragraph argument on this claim does not warrant the court's engaging in a detailed *sua sponte* analysis. Defendant's motion for summary judgment on the § 1371.4 claim is DENIED.

V. CONCLUSION

      For the reasons set forth above, defendant's motion for summary judgment (ECF No. 14) is DENIED in full.

      IT IS SO ORDERED.

DATED: December 19, 2011.

                                UNITED STATES DISTRICT JUDGE